[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Martin,* Slip Opinion No. 2018-Ohio-3226.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3226

THE STATE OF OHIO, APPELLEE, *v.* MARTIN, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Martin,* Slip Opinion No. 2018-Ohio-3226.]

*Juvenile procedure—R.C. 2152.021(F)(3)—R.C. 2152.021(F)(3) requires appointment of guardian ad litem when a juvenile is a human-trafficking victim and is charged with one or more offenses related to the victimization, which may include violent offenses—In absence of objection to a juvenile court's failure to consider applicability of R.C. 2152.021(F), criminal plain-error standard applies—Appellant failed to present evidence that her offenses were related to her victimization and therefore failed to show that juvenile court's failure to consider and apply R.C. 2152.021(F) was plain error—Court of appeals' affirmance of appellant's convictions and sentence affirmed.*

(No. 2016-1891—Submitted January 23, 2018—Decided August 14, 2018.)

APPEAL from the Court of Appeals for Summit County,

No. 27789, 2016-Ohio-7764.

_____

**FRENCH, J.**

{¶ 1} This appeal concerns a juvenile court's duty to consider the applicability of R.C. 2152.021—Ohio's "safe harbor" law—which benefits certain human-trafficking victims charged with juvenile delinquency. R.C. 2152.021(F)(3) requires the court to appoint a guardian ad litem when a juvenile is a human-trafficking victim and is charged with an offense that is "related to" the victimization. Appellant, Alexis Martin, asks this court to hold that the juvenile court's failure to consider and apply R.C. 2152.021(F)(3) invalidated its discretionary transfer of her case to adult court.

{¶ 2} We reject the state's argument that Ohio's safe-harbor provisions apply only to nonviolent offenses. Nevertheless, we hold that when there was no objection to a juvenile court's failure to consider the applicability of R.C. 2152.021(F), as in this case, the criminal plain-error standard applies. And here, Martin cannot carry her burden of demonstrating plain error. Because she cannot do so, we need not address whether her guilty plea in adult court waived her claim that the juvenile court erred in failing to consider R.C. 2152.021(F). We affirm the judgment of the Ninth District Court of Appeals that affirmed Martin's convictions and sentence.

## FACTS AND PROCEDURAL BACKGROUND

### *The offenses*

{¶ 3} Martin was 15 years old when she and three adults planned to rob Angelo Kerney and burglarize his home. On November 7, 2013, Martin and Janae Jones went to Kerney's house. They distracted 36-year-old Kerney and 20-year-old Alecio Samuel with dancing and sex. Jones went upstairs to have sex with Kerney, and Martin stayed downstairs to have sex with Samuel.

{¶ 4} Two men, Dashaun Spear and Travaski Jackson, entered the house. Spear went upstairs and shot Kerney twice in the head, killing him. Samuel was shot in the head after begging for his life. He survived but sustained serious

injuries. Samuel saw Martin and her accomplices cleaning up the scene before they left.

{¶ 5} Martin was arrested and charged with delinquency counts of aggravated murder, attempted murder, felonious assault, aggravated robbery, aggravated burglary, and tampering with evidence.

### Martin's childhood and human trafficking

{¶ 6} Martin faced significant obstacles before she committed the offenses in this case. Her parents were often absent from her life. Both her parents and her stepfather were involved with drugs, and her mother was imprisoned for drug trafficking. Martin's father physically abused her. She was shuffled between family members and foster parents, and she changed schools often. A family member mocked Martin for being biracial. Another family member locked her in a dark closet as punishment.

{¶ 7} Martin was diagnosed with depression by age eight. According to Martin, when she was 10 and 11 years old, a 21-year-old man repeatedly raped her. At age 12, Martin attempted suicide, and her 16-year-old "boyfriend" raped and impregnated her. She suffered a miscarriage and had the unborn child's name tattooed on her torso.

{¶ 8} According to Martin, at age 14 or 15, she was kidnapped and forced into exotic dancing. She reported the kidnapping to her probation officer. There is also evidence that Kerney trafficked Martin. According to Martin, Kerney had her perform exotic dances, sell drugs for him, prepare about eight other girls for prostitution, and collect money from them. Martin used the name Alexis Love and referred to Kerney as "Dad."

### The court proceedings

{¶ 9} In juvenile court, Martin waived her right to a probable-cause hearing and the state asked the court to transfer her case to adult court. The juvenile court conducted an amenability hearing to determine whether Martin should be tried as

an adult.  Court psychologist Dr. Thomas Webb testified that Martin "had a bad experience in terms of possible kidnap" and was involved with dancing, "something that she learned possibly under very adverse conditions."  Citing the amenability report and Dr. Webb's testimony, the court asked the parties whether Martin's status as a human-trafficking victim affected her amenability:

> My question is: When the State of Ohio looks at the amenability report and looks at this juvenile and the very clear history of human trafficking, how does the state suggest that the court weigh that factor in considering which court should have jurisdiction * * * as a result of these acts?

Following the state's response, the court continued:

> I would consider the dancing to be sex trafficking.  I would consider the being kidnap[p]ed and taken to Cincinnati to dance to be human trafficking.  Quite frankly human trafficking doesn't have to be for sex.  I would consider a young girl who's given drugs and told to sell them to be an instance of human trafficking because it's being trafficked for labor and I'm not saying that that's here or there.

{¶ 10} In its transfer order, the court listed its findings that favored retaining jurisdiction under R.C. 2951.12(D).  One of those findings was that Martin had been a human-trafficking victim.  But neither the court nor Martin's counsel nor the state invoked R.C. 2152.021 before the court transferred Martin's case to adult court.

{¶ 11} In adult court, Martin challenged the court's jurisdiction and asked the court to stay the proceedings, vacate the transfer order, and remand the case to

the juvenile court to appoint a guardian ad litem and consider diversion. The court determined that it had no authority to review the juvenile court's transfer order or remand the case.

{¶ 12} Martin pleaded guilty to one count of aggravated murder with a three-year firearm specification and one count of felonious assault. She did so with the understanding that she could challenge the adult court's jurisdiction on appeal, and she renewed her objection to the court's jurisdiction at sentencing.

{¶ 13} During the sentencing hearing, the court discussed Martin's relationship with Kerney: "In fact, the facts in the report indicate that Ms. Martin was basically, in a certain sense, working for Angelo Kerney, assisting him as he dealt with young women who were making themselves available in escort work; which is a polite way of saying prostitution." The court sentenced Martin to a prison term of 21 years to life.

{¶ 14} The Ninth District Court of Appeals affirmed Martin's convictions and sentence, holding that the trial court correctly rejected Martin's argument that it lacked jurisdiction. 2016-Ohio-7764, ¶ 11. It also held that because Martin pleaded guilty, she waived her claim that the juvenile court erred in failing to consider the applicability of R.C. 2152.021(F). *Id.* at ¶ 12-13.

{¶ 15} Martin appealed, presenting two propositions of law:

1. Once a determination has been made that a juvenile defendant was the victim of human trafficking, the trial court must appoint a guardian ad litem and conduct a safe harbor hearing prior to issuing a bindover decision.

2. A juvenile does not waive issues related to a legally defective bindover proceeding by pleading guilty in common pleas court.

5

## ANALYSIS

### *The effect of Martin's guilty plea*

{¶ 16} In Martin's second proposition of law, she challenges the court of appeals' holding that her guilty plea in adult court waived her claim based on the juvenile court's failure to consider the safe-harbor law. The court of appeals held that because Martin pleaded guilty, "Martin's argument * * *, which pertains to error on the part of the Juvenile Court, independent from her argument pertaining to the jurisdiction of the trial court, was waived through her guilty plea." 2016-Ohio-7764 at ¶ 13. Martin contends that her safe-harbor claim survived her guilty plea. The state argues that when a defendant enters a guilty plea in adult court, she can appeal only the juvenile court's probable-cause and amenability findings and that she cannot appeal based on alleged procedural defects that she did not raise in those proceedings.

{¶ 17} As we explain below, Martin cannot prevail on the merits of her safe-harbor claim because she cannot show that plain error occurred in the juvenile court. So we need not decide whether she waived her safe-harbor claim by pleading guilty in adult court. *See, e.g.*, *State v. Morgan*, __ Ohio St.3d __, 2017-Ohio-7565, __ N.E.3d __, ¶ 12, 51 (requiring a juvenile who pleaded guilty in adult court to show prejudice in order to obtain relief for juvenile court's failure to appoint a guardian ad litem during amenability proceedings). We proceed to the merits of Martin's arguments in support of her first proposition of law.

### *R.C. 2152.021(F) is clear and unambiguous*

{¶ 18} In 2012, the General Assembly enacted R.C. 2152.021—Ohio's safe-harbor law—because juveniles accused of delinquency are often victims of human trafficking and because that victimization often leads to delinquent acts. *See* 2012 Am.Sub.H.B. No. 262, Section 4. R.C. 2152.021(F) states:

(1) At any time after the filing of a complaint alleging that a child is a delinquent child and before adjudication, the court may hold a hearing to determine whether to hold the complaint in abeyance pending the child's successful completion of actions that constitute a method to divert the child from the juvenile court system if the child agrees to the hearing and either of the following applies:

(a) The act charged would be a violation of section 2907.24, 2907.241, or 2907.25 of the Revised Code if the child were an adult.

(b) The court has reason to believe that the child is a victim of a violation of section 2905.32 of the Revised Code, regardless of whether any person has been convicted of a violation of that section or of any other section for victimizing the child, and the act charged is related to the child's victimization.

\* \* \*

(3) If either division (F)(1)(a) or (b) of this section applies, the court shall promptly appoint a guardian ad litem for the child. The court shall not appoint the child's attorney as guardian ad litem. If the court decides to hold the complaint in abeyance, the guardian ad litem shall make recommendations that are in the best interest of the child to the court.

(4) If after a hearing the court decides to hold the complaint in abeyance, the court may make any orders regarding placement, services, supervision, diversion actions, and conditions of abeyance, including, but not limited to, engagement in trauma-based behavioral health services or education activities, that the court considers appropriate and in the best interest of the child. The court may hold the complaint in abeyance for up to ninety days while the

child engages in diversion actions. If the child violates the conditions of abeyance or does not complete the diversion actions to the court's satisfaction within ninety days, the court may extend the period of abeyance for not more than two additional ninety-day periods.

(5) If the court holds the complaint in abeyance and the child complies with the conditions of abeyance and completes the diversion actions to the court's satisfaction, the court shall dismiss the complaint and order that the records pertaining to the case be expunged immediately. If the child fails to complete the diversion actions to the court's satisfaction, the court shall proceed upon the complaint.

{¶ 19} R.C. 2152.021(F) contains a mix of mandatory and discretionary language, but it is plain and unambiguous. And when statutory language is unambiguous, we need not resort to rules of statutory interpretation—we simply apply the language. *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 20} R.C. 2152.021(F)(1)(a) and (F)(3) require the juvenile court to appoint a guardian ad litem to assist a juvenile who has been charged with certain solicitation or prostitution offenses—namely, violations of R.C. 2907.24 (solicitation), 2907.241 (loitering to engage in solicitation), and 2907.25 (prostitution). R.C. 2152.021(F)(1)(b) and (F)(3) require the same when the court has reason to believe that the juvenile is a human-trafficking victim and that the offenses charged are "related to" the victimization.

{¶ 21} After the court appoints a guardian ad litem, it has discretion to hold a hearing, consider the guardian ad litem's recommendations, and hold the complaint in abeyance for up to 270 days pending the juvenile's completion of

approved activities aimed to divert the juvenile from the justice system. R.C. 2152.021(F)(1), (4), and (5). If the juvenile complies with the court's mandates to the court's satisfaction, the court must dismiss the complaint and order that the records pertaining to the case be expunged. R.C. 2152.021(F)(5).

### We reject the state's argument that R.C. 2152.021(F)(1)(b) cannot be applied to violent offenses

{¶ 22} We first address the state's broad argument that R.C. 2152.021(F)(1)(b) can never be applied to violent offenses.

{¶ 23} R.C. 2152.021(F)(1)(a) identifies specific offenses that trigger the requirement that a guardian ad litem be appointed: R.C. 2907.24 (solicitation); R.C. 2907.241 (loitering to engage in solicitation); and R.C. 2907.25 (prostitution). R.C. 2152.021(F)(1)(b) does not specify triggering offenses, but it does impose an identical requirement to appoint a guardian ad litem if the court has reason to believe that the juvenile is a human-trafficking victim and that the charged offenses are related to the victimization. The term "related to" is broad. While it could have done so, the legislature placed no limitation on the offenses to which R.C. 2152.021(F)(1)(b) applies, let alone a specific exclusion of violent offenses.

{¶ 24} Further, human-trafficking victims sometimes commit violent offenses at the direction of their traffickers. While Martin did not present evidence that her violent offenses were related to her victimization, juveniles in future cases might be able to present such evidence. R.C. 2152.021(F)(1)(b) is unambiguous. We decline the state's invitation to read into the statute a limitation that does not exist.

### Plain-error analysis applies when, without objection, the juvenile court has failed to consider R.C. 2152.021(F)

{¶ 25} In *State v. Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), this court held that unless proper bindover proceedings occur, the juvenile court has exclusive jurisdiction over cases concerning children alleged to be delinquent and

that jurisdiction cannot be waived, *id.* at syllabus. But Martin was not deprived of R.C. 2152.12 bindover proceedings altogether, and she does not argue that the court's amenability ruling was erroneous. Rather, she argues that the juvenile court's failure to appoint a guardian ad litem and to consider and apply the safe-harbor law invalidated her transfer to adult court.

{¶ 26} In *Morgan*, __ Ohio St.3d __, 2017-Ohio-7565, __ N.E.3d __, this court faced a similar question. In that case, the juvenile's parents were deceased at the time of his amenability hearing, and the trial court did not appoint a guardian ad litem as R.C. 2151.281(A)(1) required. *Id.* at ¶ 4-7. This court held that the juvenile court obviously erred by failing to appoint a guardian ad litem at the amenability hearing. *Id.* at ¶ 51. But we rejected the argument that we had to vacate the bindover; we held that the Crim.R. 52(B) plain-error-review standard applied and that the juvenile had failed to show that the outcome of his bindover proceedings would have been different if the juvenile court had appointed a guardian ad litem—that is, he failed to show prejudice. *Id.* at ¶ 52-54.

{¶ 27} Like R.C. 2151.281, R.C. 2152.021(F)(1)(b) and (F)(3) require a juvenile court to appoint a guardian ad litem under certain circumstances: "If either division (F)(1)(a) or (b) of this section applies, the court shall promptly appoint a guardian ad litem for the child." We must construe " 'the word "shall" * * * as *mandatory* unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " (Emphasis and brackets sic.) *Morgan* at ¶ 22, quoting *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus. But R.C. 2152.021's mandates are not jurisdictional requirements. Rather, under *Morgan*, when a juvenile court has failed to consider the applicability of R.C. 2152.021(F) and no objection was raised in the juvenile court, plain-error analysis applies.

### *Martin cannot meet the criminal plain-error standard*

{¶ 28} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error" that was not raised below. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). First, an error, "*i.e.*, a deviation from a legal rule," must have occurred. *Id.*, citing *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274 (2001), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Second, the error complained of must be plain— that is, it must be "an 'obvious' defect in the * * * proceedings." *Id.*, quoting *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90 (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997). "Third, the error must have affected 'substantial rights.' We have interpreted this * * * to mean that the trial court's error must have affected the outcome" of the proceedings. *Id.*; *see also Morgan* at ¶ 50-51.

{¶ 29} Martin argues that under R.C. 2152.021(F)(1)(b), the juvenile court had "reason to believe" that she was a human-trafficking victim and that her offenses were "related to" her victimization. Accordingly, Martin contends that the court was required to appoint a guardian ad litem and exercise discretion regarding whether to stay the complaint and impose diversion.

{¶ 30} The state concedes that the juvenile court had reason to believe that Martin was a human-trafficking victim, though it disputes that Kerney compelled Martin to commit the offenses against him. We agree with Martin that the juvenile court had reason to believe that she was a human-trafficking victim. And there was some evidence that Kerney was her trafficker. The juvenile court specifically mentioned it at the end of the amenability hearing. As we detailed above, the court asked Martin's counsel and the prosecution how the human-trafficking evidence

should affect the court's transfer decision and then specifically mentioned the human-trafficking evidence that prompted that question.

{¶ 31} The court need only have "reason to believe" that the juvenile is a human-trafficking victim for R.C. 2152.021(F)(1)(b) to be satisfied. Here, the court indicated its belief.

{¶ 32} But even if there was clear, undisputed evidence that Kerney trafficked Martin, she cannot carry her plain-error burden. The specific facts and evidence in this case do not show that her offenses were "related to" her victimization.

{¶ 33} The term "related to" is used throughout the Revised Code, but it is not defined in it. Terms that are undefined by the legislature are accorded their common, everyday meaning. R.C. 1.42. "Related" is defined as "connected by reason of an established or discoverable relation." *Webster's Third New International Dictionary* 1916 (2002); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (discussing the broad and expansive nature of the phrases "relating to" and "relate to").

{¶ 34} Here, Martin participated in a plan to rob Kerney and burglarize his home. Kerney was murdered, and Samuel was shot in the head. Obviously, neither Kerney nor Samuel were involved in this plan. There is no evidence that Martin was compelled or coerced into committing the offenses. There is no evidence that Martin committed similar offenses against others at the behest of Kerney or Samuel. And there is no evidence that Martin planned the offenses to free herself from Kerney. In fact, Martin denied knowing that Kerney and Samuel would be killed. There is also no evidence that Martin was trafficked by any of her accomplices.

{¶ 35} Because Martin has not shown that her offenses were related to her victimization, she has not established plain error.

**CONCLUSION**

{¶ 36} The General Assembly enacted Ohio's safe-harbor law because human-trafficking victimization causes juvenile delinquency. *See* 2012 Am.Sub.H.B. No. 262, Section 4. The law gives certain victims the chance to rebuild their lives and avoid the justice system. Defense counsel, prosecutors, and the courts must become familiar with this law and follow it when it applies.

{¶ 37} R.C. 2152.021(F)(1)(b) and (F)(3) require a juvenile court to appoint a guardian ad litem when the juvenile is a human-trafficking victim and a charged offense is related to the victimization. The court then has discretion to hold a hearing, consider the guardian ad litem's recommendations, and devise a plan to divert the juvenile from the justice system. But when a juvenile court has failed to consider the applicability of R.C. 2152.021(F) and there was no objection, plain-error analysis applies. Here, Martin cannot carry the burden of establishing plain error. For these reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

HALL, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., and KENNEDY, J., concur in judgment only.

O'DONNELL, J., dissents, with an opinion.

MICHAEL T. HALL, J., of the Second District Court of Appeals, sitting for O'NEILL, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 38} Respectfully, I dissent.

{¶ 39} At the time of the incidents leading to this appeal, Alexis Martin, then age 15, was a human trafficking victim being manipulated by Angelo Kerney. Because she never had a stable home life due to her mother's history of drug use and incarceration, she lived with grandparents, an older sibling, and a friend. At ages 10 and 11, she was repeatedly raped by a 21 year old male, and at age 12, she

was raped by a 16 year old male, became pregnant, and miscarried three months later. At age 14 or 15, another adult male took her to Cincinnati and forced her to perform exotic dancing to repay a $600 drug debt but released her after she repaid the debt. Martin returned to Akron, where Kerney, her pimp, forced her to perform exotic dancing and sell drugs. He also used her to recruit, manage, and collect money from as many as eight other prostitutes he controlled, ranging in age from 14 to 24.

{¶ 40} At age 15, Martin spent her days smoking marijuana, drinking alcohol, and preparing girls for prostitution. Some days, she would drive from Akron to Cleveland to work as an exotic dancer and would not return to Akron until 5:00 a.m., after she collected Kerney's money from the prostitutes she managed.

{¶ 41} On November 7, 2013, Martin, Janae Jones (an adult female) and Dashaun Spear and Travaski Jackson (two adult males) collaborated in the robbery of Kerney's Akron home. Martin had sex with Alecio Samuel downstairs, while Jones went upstairs to have sex with Kerney. Spear and Jackson entered the house with guns; Spear went upstairs and fatally shot Kerney in the head while he was having sex with Jones. After begging for his life, Samuel suffered a non-fatal shot to the head.

{¶ 42} As a result of Kerney's killing and Samuel's shooting, the state charged Martin with delinquency for acts that if committed by an adult would constitute counts of aggravated murder, attempted murder, felonious assault, aggravated robbery, aggravated burglary, and tampering with evidence. The state then moved to transfer her case to the Summit County Common Pleas Court for trial as an adult.

{¶ 43} At the amenability hearing, Martin's attorney advised the judge that Kerney's relationship with Martin was "highly suspicious," and that Kerney had been involved in "drugs and I guess sex trafficking." Sergeant Scott Lietke, the

lead detective, testified that Martin referred to Kerney as her dad and that she was known at Kerney's house as "Alexis Love."

{¶ 44} Based on this testimony, the juvenile court found that Martin had suffered a "very clear history of human trafficking," and stated:

> My question is: When the State of Ohio looks at the amenability report and looks at this juvenile and the very clear history of human trafficking, how does the state suggest that the court weigh that factor in considering which court should have jurisdiction over her consequences as a result of these acts?

{¶ 45} The state responded that it "only saw one reference that said [Martin was] possibly being sex trafficked," but the court stated:

> I would consider the dancing to be sex trafficking. I would consider the being kidnap[p]ed and taken to Cincinnati to dance to be human trafficking. Quite frankly human trafficking doesn't have to be for sex. I would consider a young girl who's given drugs and told to sell them to be an instance of human trafficking because it's being trafficked for labor and I'm not saying that that's here or there.

{¶ 46} Despite its finding that Martin "has been a victim of sexual abuse and human trafficking in the past," the juvenile court never made any finding with respect to whether the charges related to her victimization and did not appoint a guardian ad litem for her in the juvenile court. It transferred her case to the Summit County Common Pleas Court where a grand jury indicted her for aggravated murder, attempted murder, felonious assault, aggravated robbery, aggravated burglary, kidnapping, and tampering with evidence. Relying on representations

made to her that she could challenge the jurisdiction of the common pleas court on appeal because of the juvenile court's failure to consider R.C. 2152.021(F), she pleaded guilty to aggravated murder with a three-year firearm specification and one count of felonious assault and was sentenced to 21 years to life in prison.

{¶ 47} The Ninth District Court of Appeals affirmed the judgment of the common pleas court, explaining that the common pleas court had correctly rejected Martin's argument that it lacked jurisdiction and that by pleading guilty, Martin had waived her ability to raise the juvenile court's error in failing to consider R.C. 2152.021(F).

## Law and Analysis

### Standard of Review

{¶ 48} We have held that the plain-error standard that we apply in criminal proceedings applies when errors that are not preserved arise in juvenile-delinquency proceedings. *State v. Morgan*, __ Ohio St.3d __, 2017-Ohio-7565, __ N.E.3d __, ¶ 48. "To establish plain error, a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 26. In the context of an amenability hearing, the defendant bears the "burden to prove that the error affected the outcome of the proceeding, that is, that he would not have been bound over to the adult court." *Morgan* at ¶ 51. The plain error doctrine should be applied only " 'to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice.' " *Id*. at ¶ 40, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

### Ohio's Safe Harbor Law

{¶ 49} In 2012, the Ohio General Assembly adopted R.C. 2152.021(F), a human trafficking safe harbor statute that provides:

(1) At any time after the filing of a complaint alleging that a child is a delinquent child and before adjudication, the court may hold a hearing to determine whether to hold the complaint in abeyance pending the child's successful completion of actions that constitute a method to divert the child from the juvenile court system if the child agrees to the hearing and either of the following applies:

* * *

(b) *The court has reason to believe that the child is a victim of a violation of section 2905.32 of the Revised Code*, regardless of whether any person has been convicted of a violation of that section or of any other section for victimizing the child, *and the act charged is related to the child's victimization.*

* * *

(3) *If either division (F)(1)(a) or (b) of this section applies, the court shall promptly appoint a guardian ad litem for the child.* The court shall not appoint the child's attorney as guardian ad litem. If the court decides to hold the complaint in abeyance, *the guardian ad litem shall make recommendations that are in the best interest of the child to the court.*

(Emphasis added.)

{¶ 50} The majority asserts that "Martin cannot prevail on the merits of her safe-harbor claim because she cannot show that plain error occurred in the juvenile court." Majority opinion at ¶ 17. The majority therefore concludes that it "need not decide whether [Martin] waived her safe-harbor claim by pleading guilty in adult court." *Id.*

{¶ 51} But plain error did occur in the juvenile court, and the record establishes that fact. There is no dispute that the juvenile court had reason to believe

that Martin was a human trafficking victim because the juvenile court made that finding.  Thus, the first prong of the statute is satisfied.

**{¶ 52}** The majority, however, concludes that the acts charged were not "related to" Martin's victimization.  While acknowledging the broad and expansive nature of the term "related to," the majority decries the lack of evidence that the acts charged were "related to" Martin's victimization, such as evidence that Martin was compelled or coerced into committing the offenses, had committed similar offenses against others at the behest of Kerney or Samuel, planned the offenses to free herself from Kerney, or had been trafficked by any of her accomplices.  Majority opinion at ¶ 33-34.

**{¶ 53}** The majority's analysis seeks proof of factors not required by the statute.  R.C. 2152.021(F) requires only that the court have reason to believe that "the act charged is related to the child's victimization."  It is axiomatic that the robbery and murder of Kerney, Martin's sex trafficker, who was trafficking and exploiting her at the time of the robbery, related to her victimization because he controlled her at that time and she had a slavish relationship with him.

**{¶ 54}** "Related to" is not defined in the statute.  *Black's Law Dictionary* defines "related" to mean "[c]onnected in some way; having relationship to or with something else."  *Black's Law Dictionary* 1479 (10th Ed.2014).  In *Tyco Healthcare Group, L.P. v. Ethicon Endo-Surgery, Inc.*, the Court of Appeals for the Federal Circuit defined "related to" as follows:  "In general, 'related to' means one thing has some relationship or connection to another thing."  587 F.3d 1375, 1378 (Fed.Cir.2009), citing *Random House Webster's Unabridged Dictionary* 1626 (1998) (defining "related" to mean "associated, connected" and "allied by nature, origin, kinship, marriage, etc.").

**{¶ 55}** The evidence established that a relationship existed between Kerney and Martin and that these crimes related to her victimization because she intended to make him the victim of her act.  The evidence further established that Martin

collected money from other dancers that Kerney controlled, so she knew that money would be in the house when she conspired in planning the robbery. Thus, that crime related to her trafficking. And thus, the elements of the statute triggering the juvenile court's obligation to appoint a guardian ad litem have been satisfied. It failed to do so and instead bound Martin over to common pleas court. She is now serving a sentence of 21 years to life; although she had expected to be able to challenge the error of the juvenile court on appeal, she has been denied that opportunity.

**{¶ 56}** Because the juvenile court failed to appoint a guardian ad litem for her, it never heard any recommendations from a guardian ad litem that would have been in her best interest. Even after inquiring of the state what consideration it should give to Martin's "very clear history of human trafficking," it never addressed the relationship between Martin and Kerney or made a statutory finding that the crimes related to her victimization. That failure denied her right to due process because it deprived her of the opportunity to present recommendations to the juvenile court about other dispositional alternatives and recommendations or treatment alternatives pursuant to R.C. 2152.021(F)(3) and (F)(4) that would be in her best interest.

**{¶ 57}** The record here demonstrates plan error in that the juvenile court deviated from the statute because it never considered or addressed whether Martin's victimization by Kerney related to these crimes (which it did). This is obvious error because the court on the record inquired of the prosecutor what consideration it should give to her victimization and the court's omission precluded its consideration of alternative dispositions which a guardian ad litem could have made in Martin's best interest, instead of her resulting 21 year sentence. This is plain error.

**{¶ 58}** R.C. 2152.021(F) directs that the court shall appoint a guardian ad litem when the court has reason to believe that the child is a victim of human

trafficking and the acts charged are related to the child's victimization. The plain error committed by the juvenile court resulted in a manifest miscarriage of justice, which can only be corrected by reversing the appellate court's judgment, vacating Martin's guilty plea, and remanding the matter to the juvenile court for compliance with the statutory requirement to appoint a guardian ad litem for her.

### Conclusion

{¶ 59} Accordingly, I would reverse the judgment of the Ninth District Court of Appeals, vacate Martin's guilty plea, and remand this matter to the juvenile court for the appointment of a guardian ad litem consistent with R.C. 2152.021(F)(3).

_____

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and C. Richley Raley Jr., Assistant Prosecuting Attorney, for appellee.

Kinsley Law Office and Jennifer M. Kinsley, for appellant.

Case Western Reserve University Law School, Human Trafficking Law Clinic, and Maureen Sheridan Kenny, urging reversal for amici curiae Cleveland Rape Crisis Center, Gracehaven Central Ohio Youth for Christ, Near West Side Multi Service Corporation, d.b.a. May Dugan Center, Advocating Opportunity, S.O.A.P. ("Save Our Adolescents from Prostitution") (Northeast Ohio Chapter), Harriet Tubman Movement, Welcome House, Renee Jones Empowerment Center, and Children's Law Center, Inc.

Ohio State University Moritz College of Law Clinical Programs, Kimberly Payne Jordan, Rachel Tallmadge, Paige Weinstein, Kelsey Kornblut, Quinn Dybdahl, and Kelsey Vice, urging reversal for amici curiae Justice for Children Project, Advocating Opportunity, Finding Hope, Franklin County Public Defender, and Mount Carmel Crime and Trauma Assistance Program.

Jones Day, Kenneth M. Grose, Peter J. Mazza, and Ashley E. Goff; and Brooklyn Law School, Kate Mogulescu, and Cynthia Godsoe, urging reversal for amicus curiae Human Trafficking Pro Bono Legal Center.

_____