[Cite as *State v. Doss*, 2019-Ohio-2247.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-41 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-493 |
| | : | |
| JOSEPH H. DOSS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of June, 2019.

. . . . . . . . . . .

ROGER A. STEFFAN, Atty. Reg. No. 0086330, Assistant Municipal Prosecutor, City of Urbana, 200 South Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

REGINA ROSEMARY RICHARDS, Atty. Reg. No. 0079457, 4 West Main Street, Suite 707, Springfield, Ohio 45502
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Joseph Doss appeals his conviction for violating a civil protection order. We determine the evidence was insufficient to establish that Doss was properly notified of the civil protection order before he was alleged to have violated it, and we further conclude the trial court's failure to instruct the jury on the element of notice of the protection order was plain error. We reverse the judgment of the trial court and vacate the conviction.

## I. Facts and Procedural History

{¶ 2} On May 21, 2018, Doss's wife, Holly, was granted an ex parte domestic violence civil protection order (CPO) against him. (Holly had recently initiated divorce proceedings.) The CPO barred Doss from initiating or having any contact with Holly, including by way of text messages. At 2:28 a.m., on June 7, Doss sent Holly a text message saying, "I sure do miss you baby." Holly immediately called the police, and Doss was arrested and charged with violating the CPO.

{¶ 3} The case was tried to a jury in Champaign County Municipal Court. Holly testified that the CPO was issued in the morning, and that in the afternoon she texted Doss that his daughter was trying to call him, because it was her birthday. After first responding that he was on the phone, Doss texted back: "I'm free now. However, perhaps due to the apparent level of emotional distress that caused [the child], perhaps we's [sic] see fit to wait until some more orders are in-place regarding visitation so I can say with certainty when I will be able to see them. Otherwise, please precede [sic] the girl's phone calls[.]" (Exhibit B; Tr. 96). Holly testified that the next text message she received from Doss was the June 7 message. She said that before the CPO was issued on May 21, she would receive ten to twenty messages a day from him. Holly testified that she did not tell Doss about the CPO. She said that she did not know whether Doss was served with the

CPO and could not recall any other hearing about the order. The CPO itself has no proof-of-service. It states only instructions that Doss was to be served and that he could be found at 451 Scioto Street in Urbana.

{¶ 4} Officer Hiltibran of the Urbana Police Department was the officer who responded to Holly's initial call. He testified that the first thing Holly said to him when he arrived was that she wanted Doss charged. Officer Hiltibran took a picture of the June 7 text message and confirmed that there was a CPO. He testified that he then went to 179 Camelot Street in Urbana, where he found Doss, told him about the CPO, and arrested him.

{¶ 5} After the state rested, Doss moved for an acquittal under Crim.R. 29, arguing that the evidence was insufficient to prove that he had proper notice of the CPO. The trial court overruled the motion and gave the case to the jury. The court did not instruct the jury on the element of the offense that the state was required to prove that Doss was either served with the protective order, shown the order, or informed of it by proper authorities. R.C. 2919.27(D). The jury returned a guilty verdict. Before sentencing, Doss renewed his motion for acquittal, which the trial court also overruled. The court sentenced him to a jail term and ordered him to pay a fine and costs.

{¶ 6} Doss appeals.

## II. Analysis

{¶ 7} Doss's sole assignment of error alleges:

> The conviction violates Defendant-Appellant's right to due process as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and the Art. I, Sec. XIV of the Ohio Constitution because

the evidence was insufficient to prove every essential element of the offense charged beyond a reasonable doubt where the prosecution failed to show service or notice of an ex parte protection order and the trial court failed to instruct the jury of the same.

Effectively, the assignment raises two related issues: whether the evidence was sufficient to find Doss had proper notice of the protective order and whether the trial court's failure to instruct the jury on the notice element constituted reversible error.

## A. Sufficiency of the evidence

{¶ 8} The standard for reviewing a sufficiency challenge is a familiar one: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9} Doss was convicted of violating R.C. 2919.27(A)(1), which states that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section * * * 3113.31 of the Revised Code." R.C. 3113.31 requires that a copy of any protection order be issued to the respondent, among other, and further requires the issuing court to "direct that a copy of an order be delivered to the respondent on the same day that the order is entered." R.C. 3113.31(F)(1). These service requirements are incorporated into R.C. 2919.27(A)(1), and the Supreme Court has held that service of the

protection order on the defendant is an element of the offense. *See State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, ¶ 28. However, after *Smith,* R.C. 2919.27 was amended so that proof of service alone is not required to show a violation. R.C. 2919.27(D) now includes that "[i]n a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order * * * was served on the defendant if the prosecution proves that the defendant was shown the protection order * * * or a copy * * * or a judge, magistrate, or law enforcement officer informed the defendant that a protection order * * * had been issued, and proves that the defendant recklessly violated the terms of the order * * *." Consequently, to show a violation of R.C. 2919.27(A)(1), the state must prove that the defendant recklessly violated the terms of the protection order, and that the defendant was served with the order or otherwise was notified about the order in one of the two ways described in R.C. 2919.27(D).

{¶ 10} Here, Doss argues that the evidence was insufficient to prove that he was properly notified about the CPO. In our opinion, even when viewing the evidence in a light most favorable to the state, a rational trier of fact could not have found proper notification, and the evidence was insufficient to support that element.

{¶ 11} There was no direct evidence Doss was served with the CPO. There was no direct evidence that Doss was shown the CPO. There was no direct evidence that Doss was informed by a judge, magistrate, or law enforcement officer that the CPO had been issued. While Officer Hiltibran told Doss about the CPO at his arrest, that was after Doss had already violated the order. The evidence did not reveal who, if anyone, showed Doss the order or who informed him of it. The last page of the CPO instructed the Champaign County Sheriff to deliver a copy of the CPO to Doss, but there was no

certificate of service showing that the sheriff did so. One would believe it would have been relatively easy for the state to show service simply by introducing a certificate of service signed by the Sheriff or by calling the person who accomplished the task as a witness. But they did not.

{¶ 12} At best, the evidence could have been interpreted to suggest that Doss knew that the CPO had been issued. Holly testified that before the CPO was issued, she would receive ten to twenty text messages a day from Doss. But the first unsolicited message he sent after the CPO had been issued (more than two weeks later) was the June 7 message. Also, shortly after the CPO was issued, on the afternoon of the same day, Doss told Holly in a text message, "perhaps we see fit to wait until more orders are in place regarding visitation so I can say for certainty when I will be able to see them." (Ex. B, Tr. 96). According to Holly, the CPO was the only order in effect at that time. Also, the CPO ordered the Sheriff to deliver the CPO to Doss. In addition, when Officer Hiltibran confronted Doss on June 7, the officer asked whether Doss had sent the text. Doss hesitated and then said he did not remember. The jury might have inferred from all these circumstances that Doss was actually aware he was prohibited from contacting Holly. But actual awareness of the order was not enough.

{¶ 13} In *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, the petitioner testified she had shown Smith a copy of the protective order and told him he was not allowed to be around her. The next day, he entered her house, attempted to choke her, and engaged in a "tussle." Smith had not yet been formally served with the order. The *Smith* court of appeals decided that service of the order was not an element of the offense and that knowledge of the order was sufficient to have found Smith had

violated it. But the Supreme Court determined actual notice was not enough. The court of appeals judgment was reversed, and the Supreme Court held "the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation." *Id.* at syllabus. It was only after *Smith* that the two alternative methods of proof were added to the statute in R.C. 2919.27(D). Actual knowledge is still not an alternative to support a conviction.

{¶ 14} We conclude the evidence was insufficient to prove that Doss had been served with the order, "was shown the protective order," or that "a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued."

## B. Jury instructions

{¶ 15} The trial court told the jury that to find Doss guilty it must find that he "recklessly violated the terms of a Protection Order." (Tr. 144). The court said nothing to the jury about finding that Doss had proper notice of the CPO. It appears that neither the parties nor the trial court followed the model instructions for this offense. Those instructions, consistent with *Smith* and R.C. 2919.27(D), include the requirement that the jury must also find "the defendant was (served) (shown the protection order or copy) (informed by a [judge] [magistrate] [law enforcement officer] that the protection order was issued) and recklessly violated the terms of the protection order." Ohio Jury Instructions, CV Section 519.27 (Rev. Oct. 14, 2017).

{¶ 16} Doss did not object to the omission of the element from the jury instructions. But he argues that the trial court's failure to instruct the jury about the notice element was plain error.

{¶ 17} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Crim.R. 52(B) places three limitations on a reviewing court's determination of whether to correct an error that was not raised below: (1) an error must have occurred; (2) the error must constitute an "obvious defect" in the proceedings; and (3) the error must have affected the ultimate outcome of the proceedings. *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, 116 N.E.3d 127, ¶ 28.

{¶ 18} The state tacitly concedes that the trial court erred regarding instructions but argues that the error was harmless. When the trial court has "failed to instruct the jury as to all the elements of an offense, the error is harmless [only] if the 'omitted element is supported by uncontroverted evidence[.]' " *State v. Meinke*, 9th Dist. Lorain Nos. 15CA010738, 15CA010739, 2017-Ohio-7787, ¶ 20, quoting *Neder v. United States*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). To add to the lack of instruction, we note that the jury questioned when Doss had been notified about the CPO. During its deliberations, the jury sent questions to the trial court, the first of which asked when Doss was notified about the CPO. The trial court answered that the jury "must rely on what information was or was not provided during the trial testimony. No (unintelligible) of information can be allowed." (Tr. 149). Defense counsel did not object. Nevertheless, because we have already determined that evidence to support the element of service, or proper alternative notice, is legally insufficient, on this record we conclude the failure to instruct on that element constituted plain error.

### III. Conclusion

{¶ 19} We sustain Doss's assignment of error. The trial court's judgment is

reversed, and the conviction is vacated.[1]

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

Roger A. Steffan
Regina Rosemary Richards
Hon. Gil S. Weithman

---

1. Nothing in this opinion changes the validity of the CPO which, unless otherwise modified, remains in effect.