[Cite as *State v. Elkins*, 2024-Ohio-1314.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-02-001 |
| | : | O P I N I O N |
| - vs - | | 4/8/2024 |
| | : | |
| BILLY J. ELKINS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM EATON MUNICIPAL COURT
Case No. CRB2200168


Martin P. Votel, Preble County Prosecuting Attorney, and Kirsten Knight, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.


**BYRNE, J.**

{¶ 1} Billy Elkins appeals from his conviction for domestic violence in the Eaton Municipal Court. For the reasons described below, we affirm the municipal court's decision.

### I. Factual and Procedural Background

{¶ 2} In April 2022, a Camden, Ohio police officer filed a complaint charging Elkins with domestic violence in violation of R.C. 2919.25(A). The complaint alleged that Elkins

forcefully grabbed the victim (his wife), leaving a bruise on her right arm.

The matter proceeded to a bench trial. We will summarize the key trial testimony below.

## A. State's Case

## 1. Amanda Elkins' Testimony

{¶ 3} Amanda testified that she lived at 7089 North Main Street ("the home") in Camden, Ohio with Elkins, her husband. They had been married since 2019.

{¶ 4} On March 31, 2022, Amanda and Elkins were at the home in the early afternoon hours. Elkins was intoxicated. Amanda and Elkins had been arguing because she asked him to leave the home. Elkins refused to leave. He began following her around the home, cursing at her.

{¶ 5} Amanda went to the home's basement to do laundry. Elkins followed her and continued cursing at her and calling her names. While in the basement, Amanda began recording Elkins with her phone. He attempted to grab the phone from her and pushed her backwards, but she was able to catch her balance.

{¶ 6} Amanda then went upstairs and went into the bathroom. Elkins followed her into the bathroom, which Amanda described as very small. Amanda testified that while in the bathroom, Elkins grabbed her left arm and pushed her backwards. She fell into the bathtub. She got up, and Elkins grabbed her by her right hand and pushed her down again. Again, she got up. In total, Elkins pushed her down into the bathtub three times.

{¶ 7} Amanda stated that she suffered injuries resulting from this incident. Specifically, she suffered bruising on both arms.

{¶ 8} After the altercation, Amanda called the police, who quickly arrived on scene. The responding officer took photographs of her arms while on scene. Amanda identified two photographs, admitted at trial, each depicting one of her arms. The photographs depict areas of slight redness on the upper side of Amanda's forearms, near her elbow. Amanda

estimated that these photographs were taken ten minutes after the altercation. Amanda testified that these areas of redness darkened over time into bruises. The bruises lasted approximately one month.

### 2. Lieutenant David Stemp's Testimony

{¶ 9}   Lieutenant David Stemp testified that he was an officer of the Camden Police Department.  On March 31, 2022, he responded to the home in response to a 9-1-1 call. When Lieutenant Stemp arrived on scene, he found Amanda very upset and crying.  She told him that she had been injured.  He looked at her injuries and photographed her arms.

### B. Defense Case

### 1. Billy Elkins' Testimony

{¶ 10} Elkins agreed that he and Amanda were arguing over her desire for him to leave the home and his refusal to leave.  He agreed that he followed Amanda around the basement and continued arguing in the basement, and that he attempted to knock Amanda's phone from her hand.

{¶ 11} Elkins confirmed that he followed Amanda as she went into the bathroom, but stated that he simply stood in the doorway.  Elkins claimed that Amanda then pushed him and he pushed her back and she "went back up against the wall."

{¶ 12} Elkins clarified that the only physical contact he initiated was his pushing Amanda against the wall.  "She pushed me, and then I—I pushed back * * *. "  He denied that Amanda ever fell into the bathtub or entered the bathtub.  And he denied grabbing Amanda by her arms.

{¶ 13} Elkins agreed he saw redness depicted in the photographs of Amanda's arms, but explained its presence by stating that Amanda always had "marks" and "bruises," which were the result of her work.

### C. Trial Court Decision

{¶ 14} At the conclusion of the trial, the municipal court indicated it would take the matter under advisement and issue a written decision. The court later issued a written decision finding Elkins guilty and stating the following relevant findings of fact:

> The alleged victim testified that she attempted to leave the bathroom but was stopped by the Defendant who grabbed her forearms and pushed her three (3) times into the bathtub. Two (2) pictures, Plaintiff's Exhibit 1 and 2 were offered as evidence which the alleged victim testified reflected the injuries on her forearms from being grabbed by the Defendant. The alleged victim was able to leave the bathroom and call the police.
>
> The Defendant testified that as the alleged victim was attempting to leave the bathroom, while he was blocking the doorway, he pushed her against the wall once. The Defendant testified that the alleged victim never fell into the bathtub. The Defendant testified that he told the responding Officer that the alleged victim had hit him, but then admitted during the trial that statement was false.
>
> It is clear to the Court that **both** the alleged victim and the Defendant have embellished their respective stories. The alleged victim claims to have been pushed into the bathtub three (3) times, yet her injuries are inconsistent with her testimony as they are not severe as would be expected. The Defendant testified that he only pushed the alleged victim up against the wall as she attempted to exit the bathroom, yet she has red marks on her arms.
>
> Therefore, the Court finds the Defendant, Billy J. Elkins guilty of Domestic Violence, a violation of 2919.25(A), a first-degree misdemeanor. In doing so, the Court focused on the totality of the circumstances to-wit: the Defendant being intoxicated, following the victim around the residence in an attempt to continue with their argument, attempting to knock the victim's cell phone from her hand, blocking her in the bathroom, and most notably that he pushed the victim against the wall as she attempted to exit the bathroom. The Court finds the victim's testimony to be credible as it relates to the Defendant grabbing her forearms and causing the red marks reflected in the pictures.

{¶ 15} Following the court's decision but before sentencing, Elkins filed a written motion for acquittal on the domestic violence charge and asked the court to instead find him guilty of disorderly conduct, as a lesser-included offense. The court denied Elkins' motion.

- 4 -

{¶ 16} The court subsequently issued its sentence, consisting of a 90-day suspended jail sentence, a fine, and court costs. The court placed Elkins on one year of probation.

{¶ 17} The record also contains the following form, which appears to be signed by Elkins:

CRB 2200168

**FORM 10.04-A: NOTICE CONCERNING POSSESSION OR PURCHASE OF FIREARMS**

**NOTE**: Rule 10.04 of the Rules of Superintendence for the Courts of Ohio requires notice of possible firearm restrictions be provided to the Defendant before entering a guilty plea or plea of no contest to a misdemeanor crime of violence against a family or household member.

Pursuant to R.C. 2943.033, you are advised that if you enter a guilty plea or plea of no contest to a misdemeanor crime involving violence where you are or were any of the following:

- A spouse, person living as a spouse, former spouse of the Alleged Victim;
- A parent or child of the Alleged Victim;
- A parent or child of a spouse, person living as a spouse, or former spouse of the Alleged Victim;
- The natural parent of any child of whom the Alleged Victim is the other natural parent or the putative natural parent

it may be unlawful for you to ship, transport, purchase, or possess a firearm or ammunition as a result of any conviction for a misdemeanor offense of violence pursuant to federal law under 18 U.S.C. 922(g)(9).

**If you have any questions whether this law makes it illegal for you to ship, transport, purchase, or possess a firearm or ammunition, you should consult an attorney.**



Defendant Signature

FILED 2023 FEB 10 AM 10: 16 MUNICIPAL COURT OF

SCANNED

- 5 -

{¶ 18} Elkins appealed, raising two assignments of error, which we will address in turn.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 19} Elkins' first assignment of error states:

THE TRIAL COURT ERRED BY CONVICTING [ELKINS] OF DOMESTIC VIOLENCE UNDER R.C. 2919.25(A).

{¶ 20} In his first assignment of error, Elkins argued that the state submitted insufficient evidence as a matter of law to allow a reasonable factfinder to find him guilty of the offense of domestic violence. Specifically, Elkins argues that there was insufficient evidence presented that he knowingly caused physical harm to Amanda because the evidence presented was that he merely grabbed and pushed Amanda.

{¶ 21} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 12th Dist. Butler Nos. CA2010-06-150, CA2010-07-163 thru CA2010-07-167, and CA2010-07-180, 2011-Ohio-3018, ¶ 10. When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 22} The municipal court found Elkins guilty of domestic violence under R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical

harm to a family or household member."

{¶ 23} Elkins does not dispute that Amanda was a family or household member. We therefore confine our review to his argument that the state presented evidence insufficient to establish that he had knowledge of causing or attempting to cause physical harm to Amanda.

{¶ 24} Regarding the mental state of "knowingly," the Revised Code provides that,

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). Stated otherwise, to demonstrate knowledge, the evidence must show that the defendant was "subjectively aware that a specified result is probable." *State v. Berry,* 12th Dist. Warren No. CA2006-11-133, 2007-Ohio-7082, ¶ 12. That is, it is the defendant's mind and perception that are measured, not an objective reasonable expectation. *Id.* "This flows from the theme in Ohio law in which a person is presumed to intend the probable consequences of his voluntary acts." *Id.*

{¶ 25} In this case, the "specified result" the state must have demonstrated that Elkins had knowledge of was "physical harm." As used in the Revised Code, "physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 26} Amanda testified that Elkins grabbed her left arm and her right hand and pushed her down three times, causing her to fall into the bathtub each time. She stated that she suffered injuries from this contact with Elkins and identified those injuries as the

red marks on her arms, which were depicted in the state's photographs. Amanda stated that the red marks eventually darkened and bruised and took approximately one month to fade.

{¶ 27} In addition, the court heard testimony that Elkins was acting belligerently before the physical altercation, cursing his wife and calling her names. The court also heard that he attempted to physically knock a phone out of Amanda's hands.

{¶ 28} The court stated it found some of Amanda's testimony to be "embellished," including her testimony that Elkins pushed her into the bathtub three times. However, the court concluded that Elkins did push Amanda against the wall and specifically found Amanda's testimony to be credible "as it relates to [Elkins] grabbing [Amanda's] forearms and causing the red marks reflected in the pictures." The court had evidence before it that Elkins grabbed Amanda with sufficient force to leave visible marks on her arms, and which were significant enough to bruise. The evidence suggested that Elkins grabbed and pushed Amanda when he was intoxicated, and in an agitated state, which had been ongoing for some time. Under these circumstances, the evidence indicated that Elkins would be subjectively aware that if he grabbed and pushed Amanda with such force, his actions would probably result in injury, including potentially bruising to Amanda's arms. Redness and bruising resulting from a grab is sufficient to demonstrate physical harm for purposes of R.C. 2901.01(A)(3). *State v. Torman*, 3d Dist. Putnam No. 12-15-10, 2016-Ohio-748, ¶ 31-32 (physical harm found where defendant grabbed and squeezed the victim's jaw, resulting in "a slight red mark" and "a little bruising"); *State v. Reese*, 8th Dist. Cuyahoga No. 85902, 2005-Ohio-5724, ¶ 12 ("Bruising constitutes 'physical harm'"). *See State v. Ford*, 6th Dist. Lucas Nos. {48}L-20-1054 and {48}L-20-1112, 2021-Ohio-3058, ¶ 47. Elkins' sufficiency argument is without merit.

{¶ 29} Elkins alternatively contends that if the evidence was insufficient to find him

guilty of domestic violence, then the court erred by not finding him guilty of the lesser-included offense of disorderly conduct, as he had requested post-trial.[1]  However, because we have found that the evidence was sufficient to find Elkins guilty of domestic violence, Elkins' disorderly conduct argument is moot.

{¶ 30}  We overrule Elkins' first assignment of error.

### B. Constitutionality of 18 U.S.C. 922(g)(9)

{¶ 31}  Elkins second assignment of error states:

> THE BRADY FIREARM DISQUALIFICATION IS UNCONSTITUTIONAL AS APPLIED HERE.

{¶ 32}  Elkins asks this court to find that a federal statute, 18 U.S.C. 922(g)(9), unconstitutionally infringes upon his constitutional rights under the Second and the Fourteenth Amendments to the United States Constitution.  The statute states:

> It shall be unlawful for any person * * * who has been convicted in any court of a misdemeanor crime of domestic violence * * * to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Elkins argues that this federal statute unconstitutionally burdens his right to own and possess firearms because the statute is presumptively invalid under the United States Supreme Court's current firearms jurisprudence.  Elkins primarily rests this argument on *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 24, 142 S.Ct. 2111 (2022), in which the United States Supreme Court held that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.  Elkins argues that the state has failed to overcome the presumption referenced in *Bruen* with respect to 18 U.S.C.

---

1. Elkins did not assign a separate error concerning this argument.

922(g)(9).

{¶ 33} Elkins characterizes his argument as an as-applied challenge to the constitutionality of the federal statute. In an as-applied challenge, the challenger contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, is unconstitutional. *State v. Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 16. An as-applied challenge contends that the statute is unconstitutional as applied to the challenger's activity, even though the statute may be capable of valid application to others. *State v. Worst*, 12th Dist. Butler No. CA2004-10-270, 2005-Ohio-6550, ¶ 42. Thus, an as-applied challenge focuses on the particular application of the statute. *Carrick* at ¶ 16.

{¶ 34} However, prior to considering Elkins' argument, we must note that before the trial court, Elkins only referenced 18 U.S.C. 922(g)(9) once, without citation, when his counsel wrote in his motion for acquittal that "the conviction of the lesser offense [of disorderly conduct] would not constitute a Brady disqualification of Elkins' gun rights." But Elkins only made this statement regarding the law as a matter of fact; Elkins failed to object in any way or to make any argument on constitutional or any other grounds regarding 18 U.S.C. 922(g)(9) before the trial court. It is well established that "the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122 (1986). Therefore, an appellant's "'[f]ailure to raise the issue of the constitutionality of a statute or its application at the trial court level generally constitutes waiver of that issue and need not be heard for the first time on appeal.'" *State v. Myers*, 12th Dist. Madison No. CA2012-12-027, 2014-Ohio-3384, ¶ 12, quoting *State v. Golden*, 10th Dist. Franklin No. 13AP-927, 2014-Ohio-2148, ¶ 11. *Accord Awan* at 122.

{¶ 35} However, "[t]he waiver doctrine stated in *Awan* is discretionary, and an appellate court may review claims of defects affecting substantial rights for plain error,

despite an appellant's failure to bring such claims to the attention of the trial court." *State v. Fuell*, 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627, ¶ 70, citing *In re M.D.*, 38 Ohio St.3d 149 (1988); Crim.R. 52(B). In *Fuell* we explained:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Crim.R. 52(B) places three limitations on a reviewing court's decision to correct an error not raised before the trial court. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). First, an error, "i.e., a deviation from a legal rule," must have occurred. *Id.*, citing *State v. Hill*, 92 Ohio St.3d 191, 200 (2001), in turn citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770 (1993). Second, the error complained of must be plain, i.e., it must be "an 'obvious' defect in the * * * proceedings." *Id.*, quoting *State v. Sanders*, 92 Ohio St.3d 245, 257 (2001), in turn citing *State v. Keith*, 79 Ohio St.3d 514, 518 (1997). Third, the error must have affected "substantial rights." *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, ¶ 28.
>
> As just stated, plain error must be "plain." *Barnes* at 28 ("The lack of a definitive pronouncement from this court and the disagreement among the lower courts preclude us from finding plain error"). "[I]f a forfeited error is not plain, a reviewing court need not examine whether the defect affects a defendant's substantial rights; the lack of a 'plain' error within the meaning of Crim.R. 52(B) ends the inquiry and prevents recognition of the defect." *Id.* In *Barnes*, the Ohio Supreme Court held that a court of appeals erred when it applied plain error analysis when the putative error was not actually "plain." *Id.*

*Fuell* at ¶ 70-71.

{¶ 36} Elkins has not demonstrated plain error on the part of the trial court in conjunction with the alleged "application" of 18 U.S.C. 922(g)(9). While Elkins argues that 18 U.S.C. 922(g)(9) is unconstitutional, the trial court in this case did not bar Elkins from possessing or owning firearms pursuant to 18 U.S.C. 922(g)(9) and did not otherwise impose any firearms prohibition associated with 18 U.SC. 922(g)(9). At most, the trial court followed the requirements of R.C. 2943.033, which provides that prior to accepting a guilty plea or plea of no contest to a misdemeanor offense of violence, the court shall inform the defendant personally or in writing that under 18 U.S.C. 922(g)(9) "it *may* be unlawful for the

person to ship, transport, purchase, or possess a firearm or ammunition as a result of any conviction for a misdemeanor offense of violence."  (Emphasis added.)  R.C. 2943.033(C). That is, the purpose of the form is to inform the defendant of the *potential* effect of 18 U.S.C. 922(g)(9) if the defendant enters a plea of guilty or no contest to a misdemeanor offense of violence.[2]

{¶ 37} Elkins does not argue that the court violated his constitutional rights by providing him with this notice.  The notice was an accurate statement of the law at the time it was provided to him, as 18 U.S.C. 922(g)(9) had not then been found unconstitutional, and upon our review has still not been held unconstitutional by any court.  And our record does not indicate one way or the other whether Elkins has had any rights deprived based on the application of 18 U.S.C. 922(g)(9) to his individual case.  Again, all the municipal court did in this case was provide the notice; the court did not actually apply 18 U.S.C. 922(g)(9) or impose any restriction on Elkins pursuant to that statute.

{¶ 38}  In essence, Elkins is asking this court for a prospective ruling that *if* 18 U.S.C. 922(g)(9) is applied to him in the future, as a result of this conviction, and *if* that application results in a deprivation of his constitutional rights, that such action will be unconstitutional as-applied.  But because there are no facts that suggest 18 U.S.C. 922(g)(9) has been applied to him, this issue it not ripe for appellate review in the context of this direct appeal from Elkins' conviction.  *See State v. Nutter*, 12th Dist. Brown No. CA2008-10-009, 2009-Ohio-2964, ¶ 12 ("Such events have not occurred, and might not occur. As a result, we find appellant's arguments as to this issue are not ripe for review at this time").  This is particularly true here where Elkins made no argument whatsoever regarding the constitutionality of 18 U.S.C. 922(g)(9) before the trial court.  Perhaps Elkins could pursue

---

2. We note that Elkins did not enter a plea of guilty or no contest in this case.

his arguments regarding the constitutionality of 18 U.S.C. 922(g)(9) in some other proceeding, but he did not do so in this case. In these circumstances we find Elkins waived his constitutional arguments and we do not find plain error. *See United States v. Freeman*, 5th Cir. No. 23-10647, 2024 WL 885124 (Mar. 1, 2024) (finding defendant waived his argument that 18 U.S.C. 922[g][1] is unconstitutional pursuant to *Bruen* by failing to raise that argument before the trial court, and declining to find plain error).

{¶ 39} We overrule Elkins' second assignment of error.

{¶ 40} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.