[Cite as *In re J.S.*, 2017-Ohio-75.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.S.

C.A. Nos.    28342
                      28344

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 14-09-589

DECISION AND JOURNAL ENTRY

Dated: January 11, 2016

SCHAFER, Judge.

{¶1} Appellants, Danielle S. ("Mother") and Curtis S. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor child and placed him in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the natural parents of J.S., born December 31, 2013. Although Mother has one other child and Father has three other children, none of those children are parties to this appeal. Mother's older child is relevant to this appeal because she was the reason that CSB became involved with this family.

{¶3} On May 1, 2014, Mother's then five-year-old child, V.S., arrived at school with visible marks on her face. She disclosed to school personnel that Mother had repeatedly hit her that morning because she forgot something that she needed for school. The school contacted the

police about the alleged abuse and also reported that V.S. often came to school unclean and was frequently absent or tardy. V.S. was removed from Mother's custody and was later placed with her father.

{¶4} At the age of four months old, J.S. was also removed from the custody of Mother and Father pursuant to Juv.R. 6 and placed in the home of a non-relative kinship provider. CSB implemented a voluntary case plan with Mother and Father, but neither parent complied with the requirements of the reunification plan during the next several months. Consequently, on September 17, 2014, CSB filed a complaint to allege that J.S. was a dependent child. The trial court later adjudicated him a dependent child and placed him in the temporary custody of CSB.

{¶5} During the following year, the parents continued to struggle with illegal drug use and related criminal problems and failed to maintain consistent contact with J.S. or CSB. Each parent visited J.S. only a few times and lost contact with CSB for months at a time.

{¶6} On February 12, 2016, CSB moved for permanent custody of J.S. Following a hearing on the motion, the trial court terminated parental rights and placed J.S. in the permanent custody of CSB. Mother and Father separately appealed and their appeals were later consolidated. Each parent raises three similar assignments of error. For ease of review, their assigned errors will be consolidated and rearranged.

II.

**Mother's Assignment of Error I**

**The trial court committed plain error in allowing the testimony of the [CSB] caseworker that violated the rules of evidence regarding the admission of hearsay.**

**Father's Assignment of Error I**

**The trial court committed plain error[] in allowing the testimony of the [CSB] caseworker violating the rules of evidence regarding the admission of hearsay[.]**

**Mother's Assignment of Error III**

**Mother's trial attorney was ineffective when he failed to object to the hearsay testimony provided by the [CSB] worker, thus depriving Mother of meaningful participation in the permanent custody trial[.]**

**Father's Assignment of Error III**

**Father's trial attorney was ineffective when he failed to object to the hearsay testimony provided by the [CSB] worker, thereby depriving Father of meaningful participation in the permanent custody trial[.]**

{¶7} Through these assignments of error, the parents argue that the trial court committed reversible error by considering testimony of the caseworker about facts that occurred before October 2015, when he was first assigned to the case. They argue that, because the caseworker had merely reviewed the prior caseworker's notes but had no firsthand knowledge about the parents' case plan compliance before he was assigned to the case, the trial court erred in allowing him to testify about those facts. They did not object to any of this testimony at the hearing, but argue that its admission constituted plain error and/or that their trial attorneys were ineffective for failing to object its admission.

{¶8} To establish a claim of ineffective assistance of counsel, the parents must demonstrate that their trial attorneys' performance was deficient and that the deficient performance prejudiced their case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, they must show that there is a reasonable probability that, but for the attorneys' errors, the result of the proceeding would have been different. *Id.* at 694.

{¶9} The standard of review for plain error is similar to the standard for reviewing a claim of ineffective assistance of counsel, although plain error requires more certain proof of prejudice to the appellant. While ineffectiveness requires proof of a *reasonable probability* that the trial result would have been different but for the error, plain error under the criminal standard requires proof that the trial result *clearly* would have been otherwise. *State v. Murphy*, 91 Ohio St.3d 516, 559 (2001) (Cook, J, concurring). The civil plain error standard requires the demonstration of an even greater level of error, as it must be one that rises to the level of challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson,* 79 Ohio St.3d 116 (1997), syllabus. This Court has not determined which is the appropriate plain error standard to apply in cases involving the termination of parental rights and it need not do so now. *See In re D.S.*, 9th Dist. Summit No. 24619, 2009-Ohio-3167, ¶ 10.

{¶10} In other words, the parents must demonstrate not only that prejudice resulted from the admission of the caseworker's testimony, but also that the prejudice was so extreme that it rose to the level required to demonstrate plain error or ineffective assistance of counsel. Even if the parents could demonstrate that the caseworker improperly testified about facts that predated his involvement with the case, they have failed to demonstrate that the outcome of the hearing would have been different without the caseworker's testimony because several other witnesses, including the parents themselves, testified about those same facts.

{¶11} Through her own testimony, Mother conceded that she had failed to address any of the reunification requirements of the case plan since the beginning of this case. She admitted that she had been using heroin since CSB filed its complaint in this case in September 2014. Although Mother offered a variety of reasons for her failure to do so, she conceded that she had failed to maintain consistent contact with CSB, the guardian ad litem, or the trial court and that

she had visited J.S. only a few times since he was first removed from her custody. She admitted that she was in a downward spiral at one point, went on a four-month drug binge, and that she did not submit to drug testing or communicate with the prior caseworker during that time. At the time of the hearing, Mother had just recently become involved in a drug treatment program. She testified that she was finally addressing her heroin addiction because she did not want to die. She explained that she needed to focus on her own need to achieve sobriety before she could help anyone else.

{¶12} Similarly, Father testified that he had used illegal drugs and failed to maintain consistent contact with CSB or his child throughout most of this two-year case. He explained that he failed to visit J.S. initially because he was depressed and did not visit later because there was an outstanding warrant for his arrest on felony heroin charges and he did not want to be arrested.

{¶13} Consequently, the parents have failed to demonstrate plain error from the admission of the caseworker's testimony about their lack of case plan compliance before he was assigned to the case or that their trial attorneys were ineffective for failing to object to that testimony. Their first and third assignments of error are overruled accordingly.

### Mother's Assignment of Error II

**The trial court erred in granting permanent custody to [CSB] as it was against the manifest weight of the evidence.**

### Father's Assignment of Error II

**The trial court erred in granting permanent custody to [CSB] as it was against the manifest weight of the evidence[.]**

{¶14} Finally, both parents argue that the trial court's judgment was not supported by the evidence. Before a juvenile court may terminate parental rights and award permanent

custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶15} The trial court found that CSB satisfied the first prong of the permanent custody test because the children had been in the temporary custody of CSB for more than 12 of the prior 22 months and neither parent disputes that finding. Instead, they confine their challenge to the trial court's best interest determination.

{¶16} When determining the children's best interests under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶17} Throughout this case, the interaction between J.S. and each of his parents had been limited to supervised visitation because neither parent adequately addressed their substance abuse problems or any of the other reunification requirements of the case plan. Moreover, each parent visited J.S. only a few times during the two-year life of this case. At the time of the hearing, Mother had visited J.S. only twice during the prior nine months and Father had not seen him at all during that period. The caseworker observed one of Mother's two visits during that

period and explained that J.S. responded to her with "stranger danger" because he saw her so rarely.

{¶18} Although the parents offered excuses for their failure to maintain contact with their young child, and Mother testified that she had been a good mother and wanted to fulfill that role again, the evidence was not disputed that neither parent had developed a bond or a parent-child relationship with J.S. Mother testified that she missed J.S., but when describing how he had changed during a 10-month-period when she had not seen him, she testified simply that he was talking more, was more observant, and was starting to throw temper tantrums.

{¶19} On the other hand, J.S. had developed a loving bond with the foster family with whom he had lived for nearly two years. The caseworker and guardian ad litem testified about the strong bond between J.S. and the foster family and explained that he was doing very well in that home. The foster mother expressed a desire to adopt J.S. if the parents' rights were terminated.

{¶20} Because J.S. was less than three years old at the time of the hearing, the guardian ad litem spoke on his behalf. She opined that permanent custody was in his best interest because the parents had made little effort to regain custody or to even maintain a relationship with J.S. and the foster mother was prepared to provide him with a safe and stable permanent home.

{¶21} By the time of the hearing, through CSB's voluntary and involuntary involvement with this family, J.S. had been living outside the custody of his parents for more than two years. He had lived in two different temporary placements since he was four months old and was in need of a legally secure permanent placement.

{¶22} Nether parent was able to provide J.S. with a stable permanent home at the time of the hearing or in the foreseeable future and CSB had been unable to find any suitable relatives

who were willing to do so. Consequently, the trial court found that a legally secure permanent placement would only be achieved by placing J.S. in the permanent custody of CSB.

{¶23} The parents have failed to demonstrate that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Their second assignments of error are overruled.

III.

{¶24} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

DANIEL R. BACHE, Attorney at Law, for Appellant.

MADELINE LEPIDI-CARINO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

ANGELA GRINGO, Guardian ad Litem.