[Cite as *State v. Mahdi*, 2023-Ohio-4763.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 30551 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SALAH MONTREL MAHDI | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 20 01 0039 |

DECISION AND JOURNAL ENTRY

Dated: December 27, 2023

FLAGG LANZINGER, Judge.

**{¶1}** Defendant-Appellant, Salah Mahdi, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** One August evening, two people were shot at a barbershop in Akron. W.P. sustained eight gunshot wounds and died from his injuries. His friend was present when the shooting occurred. The friend sustained a gunshot wound to the leg. The barber drove him to a nearby hospital. A detective interviewed the friend the following day. The friend did not identify the shooter on that day.

**{¶3}** At the time of his death, W.P. was a police informant. He gave the police information about an individual who was incarcerated. The police began investigating known associates of the incarcerated individual. One of those known associates was Mr. Mahdi's brother. Although the police ruled out the brother as a suspect, they searched his cell phone in connection

with an unrelated incident. Information they obtained from his cell phone, federal authorities, and further investigative efforts ultimately led them to suspect Mr. Mahdi had murdered W.P.

{¶4} The police discovered that a cell phone linked to Mr. Mahdi was near the barbershop at the time of the murder. Multiple Facetime calls between that cell phone and Mr. Mahdi's brother's cell phone occurred within minutes of the murder. The police discovered that the brother deleted those calls from his phone while leaving the remainder of his call history intact. They also discovered a DNA profile on a spent casing recovered from the murder scene. The police were able to match that DNA profile to Mr. Mahdi's mother. More than a year after the shooting, W.P.'s friend viewed a photo array and identified Mr. Mahdi as the shooter.

{¶5} Mr. Mahdi was charged with aggravated murder, murder, felonious assault, and having a weapon under disability. He also was charged with several firearm specifications. A jury found him guilty on all counts. The trial court sentenced him to a total of 28 years to life in prison.

{¶6} Mr. Mahdi now appeals from his convictions. He raises four assignments of error for review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ADMITTING TESTIMONY REGARDING A WITNESS' OUT-OF-COURT IDENTIFICATION OF DEFENDANT, IN VIOLATION OF EVID.R. 801(D)(1)(c) AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶7} In his first assignment of error, Mr. Mahdi argues the trial court erred when it admitted testimony about an out-of-court identification. Upon review, this Court rejects his argument.

**{¶8}** "For reversible error to exist, there must be both error and resulting prejudice." *State v. Ross*, 9th Dist. Lorain No. 21CA011729, 2023-Ohio-1185, ¶ 25. Error in the admission of testimony will not result in a reversal if the record reflects the error was harmless beyond a reasonable doubt. *See State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, ¶ 60. The error must have impacted the verdict. *See State v. Ali*, 9th Dist. Summit No. 29611, 2021-Ohio-4596, ¶ 10.

**{¶9}** When W.P. was killed, his friend sustained a gunshot wound to the leg. The friend identified Mr. Mahdi as the shooter about sixteen months later. By the time of trial, however, the friend refused to testify about his prior identification. He took the stand but remained silent when asked any questions about his prior identification or the identity of the shooter. The State attempted to play for the friend a video recording of his photo array identification. Mr. Mahdi objected to the State playing the recording. He argued the friend's out-of-court statements were hearsay because they did not satisfy the admissibility requirements of Evid.R. 801(D)(1)(c). A sidebar conference ensued.

**{¶10}** At the conclusion of the sidebar, the court indicated the following. The State agreed it would not play the video recording for the jury. Instead, the State would question the detective who administered the photo array and introduce the array itself. Defense counsel indicated that he was unaware of any legal grounds to prohibit the State from introducing that evidence in that manner.

**{¶11}** When the friend's testimony resumed, the State showed him the photo array and attempted to ask him about it. The friend once again refused to answer the State's questions. The State then called Detective Zachary Magaw to the stand. The detective testified that he administered the friend's photo array. He indicated that the friend viewed each photo in the array a single time and selected Mr. Mahdi's photo. On the bottom of that photo and a separate page

with a witness statement section, the friend wrote "100%" to signify his confidence level regarding his identification. The State introduced the photo array as an exhibit. Mr. Mahdi did not object to the detective's testimony about the photo array. Nor did he object when the State introduced the array through the detective.

{¶12} Mr. Mahdi argues the trial court erred when it admitted evidence of the friend's prior identification. Specifically, he claims the State should not have been allowed to show the friend (1) the video recording of his meeting with Detective Magaw, or (2) the physical photo array. According to Mr. Mahdi, the friend's prior identification amounted to hearsay because it did not satisfy the admissibility requirements of Evid.R. 801(D)(1)(c).

{¶13} Initially, we note that Mr. Mahdi's brief contains a sequential error. He claims Detective Magaw testified before the friend. Yet, the record reflects the opposite occurred. The State called the detective to testify after the friend refused to answer any questions about the photo array. The parties specifically discussed the matter at sidebar. The trial court outlined the State's intention to call the detective and question him about the circumstances surrounding the photo array and the result of the array. Mr. Mahdi did not object to that procedure. Indeed, his counsel indicated that he was not aware of any legal authority that would prohibit the State from introducing the foregoing evidence in that matter.

{¶14} Upon review, this Court rejects Mr. Mahdi's assignment of error. To the extent his argument concerns the video recording of the friend's prior identification, the record reflects the recording was never played at trial. Defense counsel objected to the video recording, and the State agreed not to play it. With regard to the questions the State posed to the friend about his prior identification, we conclude that any error resulting from that exchange was harmless beyond a reasonable doubt. *See Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, at ¶ 60. The State later asked

Detective Magaw about the photo array. At no point during his testimony about the photo array did Mr. Mahdi object. Indeed, defense counsel indicated that he was unaware of any legal authority that would prohibit the State from introducing the photo array evidence through Detective Magaw. Mr. Mahdi has not explained how he was prejudiced by the State's examination of the friend in light of the testimony and evidence the State introduced through the detective without objection. This Court will not formulate an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Because Mr. Mahdi has not shown he was prejudiced by the specific errors he alleges in his brief, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

DEFENDANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE, IN DEROGATION OF HIS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶15} In his fourth assignment of error, Mr. Mahdi argues his convictions are based on insufficient evidence. Specifically, he claims the State relied strictly on inadmissible evidence to satisfy its burden of production. That evidence was testimony about (1) his cyber profile, and (2) the photo array identification W.P.'s friend made wherein he identified Mr. Mahdi as the shooter. According to Mr. Mahdi, without those two pieces of evidence, the State would not have been able to secure guilty verdicts. For the following reasons, this Court rejects his assignment of error.

{¶16} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶17} Mr. Mahdi's sufficiency argument is extremely limited. He has not challenged the sufficiency of the evidence with respect to any individual element of his convictions. His argument hinges upon the admissibility of the State's evidence. Yet, "[t]his Court must consider all of the evidence presented by the State when analyzing the sufficiency of the evidence, regardless of whether the evidence was properly admitted." *State v. Kerik*, 9th Dist. Summit No. 30539, 2023-Ohio-3455, ¶ 15. Even if the State relied on inadmissible evidence to secure Mr. Mahdi's convictions, that fact alone would not result in a reversal of his convictions. *See id.* The only question is whether, viewing all the evidence in a light most favorable to the State, any rational trier of fact could have found that the State proved its case beyond a reasonable doubt. *See Jenks* at paragraph two of the syllabus. In examining that question, we tailor our review according to the limited argument Mr. Mahdi has presented on appeal.

{¶18} The State set forth evidence that someone shot W.P. eight times while he was getting a haircut at a barbershop in Akron. The State tested shell casings found at the scene for DNA. A forensic scientist from the Bureau of Criminal Investigation found a single DNA profile on one of the casings. That profile was consistent with the DNA profile of Mr. Mahdi's mother. Detective Benjamin Surblis was tasked with collecting the mother's DNA. He secured a warrant and presented it to the mother. He did not collect the mother's DNA at that time, however, because she asked to consult with an attorney. Detective Surblis decided to honor her request. When he returned to her residence unannounced a few days later, the mother spotted him and attempted to

flee. Detective Surblis testified that he was forced to chase the mother before he could collect her DNA. He also testified that Mr. Mahdi listed his mother's address as his place of residence.

{¶19} Detective Brian French extracted information from a cell phone belonging to Mr. Mahdi's brother. He testified that the phone had a contact labeled "Chip" and another labeled "Telly G." The State was able to identify "Chip" as the barber at the shop where the shooting occurred. The State also was able to identify "Telly G" as Mr. Mahdi. Detective French testified to a series of Facetime calls between the brother and the barber and the brother and Mr. Mahdi around the time of the murder. Regarding Mr. Mahdi, the brother either placed outgoing calls to him or received incoming calls from him at 6:20 p.m., 6:38 p.m., 6:44 p.m., 6:46 p.m., and 6:50 p.m. The evidence showed the murder occurred just before 6:50 p.m. Detective French testified that, unlike calls placed through a user's cell phone network, Facetime calls rely on data, do not connect to cell towers, and cannot be used to track a user's location. He testified that he was only able to find the Facetime calls because he had physical control of the brother's phone. Moreover, the calls did not appear in the phone's call history. The detective testified the calls were absent from the phone's call history because they had been manually deleted.

{¶20} The State recovered phone records from the cell phone number they linked to Mr. Mahdi. Detective Mary Infantino used those records to generate maps based on cell tower locations and Mr. Mahdi's relative position at various points. She testified that the records showed Mr. Mahdi's phone was located in the area of the barbershop at 5:30 p.m. and in a different area at 7:13 p.m. There was testimony that the second area encompassed Mr. Mahdi's residence.

{¶21} The State also presented cellular technology testimony from an outside consultant. Adam Mosher, creator of Global Intelligence, used his patented software to create cyber profiles for Mr. Mahdi and the barber. He testified that his company generates cyber profiles based on

connection and communication attempts that cell phone applications are constantly making. Those attempts can reveal a user's physical location within approximately 25 meters. Mr. Mosher testified that Mr. Mahdi's phone and the barber's phone made several connection attempts shortly before the murder. Those attempts allowed Mr. Mosher to testify that the two phones were near one another and the barbershop at several points between 6:30 and 6:45 p.m. Mr. Mosher also testified that the phones came together again later that same evening.

{¶22} Sergeant Michael Stanar testified that, when the police finally arrested and interviewed Mr. Mahdi, he denied being in the area of the barbershop at the time of the murder. His statement was in direct contravention of his cell phone records. Thus, the evidence tended to show Mr. Mahdi lied to the police regarding his whereabouts at the time of the murder.

{¶23} The State set forth evidence that W.P. was a police informant and Mr. Mahdi's brother was an associate of the target of that investigation. Detective Surblis testified that the brother could not have murdered W.P. because the brother was subject to GPS monitoring at the time of the murder. As noted, W.P.'s friend identified Mr. Mahdi as the shooter when presented with a photo array.

{¶24} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved its case against Mr. Mahdi beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The jury heard testimony that he lied about his location at the time of the shooting. Call records showed he was in the area of the barbershop when M.P. was murdered. The jury heard testimony that the police found Mr. Mahdi's mother's DNA on one of the spent casings at the scene. Mr. Mahdi lived with his mother, and there was testimony that she attempted to flee when a detective arrived to collect her DNA. The jury also heard testimony that Mr. Mahdi exchanged multiple Facetime calls with his brother

within minutes of the shooting and only those calls had been deleted from his brother's call history. The State established Mr. Mahdi's connection to the target of the police investigation W.P. was aiding. Further, W.P.'s friend identified Mr. Mahdi as the shooter. Upon review, Mr. Mahdi has not shown the State set forth insufficient evidence to sustain his convictions. Accordingly, his fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO CONDUCT A *DAUBERT* HEARING BEFORE ALLOWING THE TESTIMONY OF THE STATE'S EXPERT WITNESS ADAM MOSHER.

## ASSIGNMENT OF ERROR III

DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO REQUEST A *DAUBERT* HEARING ON THE STATE'S EXPERT WITNESS.

{¶25} In his second assignment of error, Mr. Mahdi argues the trial court plainly erred when it allowed Adam Mosher to testify without first conducting a *Daubert* hearing. In his third assignment of error, he argues that he received ineffective assistance of counsel because his attorney did not request a *Daubert* hearing. For the following reasons, we reject his arguments.

{¶26} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error that was not raised below. First, an error, i.e., a deviation from a legal rule, must have occurred. Second, the error complained of must be plain – that is, it must be an obvious defect in the * * * proceedings. Third, the error must have affected substantial rights. We have interpreted this * * * to mean that the trial court's error must have affected the outcome of the proceedings.

(Alterations sic.) *State v. Harris*, 9th Dist. Summit No. 29583, 2020-Ohio-4365, ¶ 19, quoting *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, ¶ 28.

**{¶27}** To prevail on a claim of ineffective assistance of counsel, an appellant must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, an appellant must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

**{¶28}** This Court has explained:

> The standard of review for plain error is similar to the standard for reviewing a claim of ineffective assistance of counsel, although plain error requires more certain proof of prejudice to the appellant. While ineffectiveness requires proof of a *reasonable probability* that the trial result would have been different but for the error, plain error under the criminal standard requires proof that the trial result *clearly* would have been otherwise.

(Emphasis sic.) *In re J.S.*, 9th Dist. Summit Nos. 28342, 28344, 2017-Ohio-75, ¶ 9.

**{¶29}** As previously noted, Mr. Mosher testified for the State as an outside consultant. His company created a cyber profile for both Mr. Mahdi and the barber from the shop where the murder occurred. Mr. Mosher testified that Mr. Mahdi's phone and the barber's phone were near one another and the barbershop at several points between 6:30 and 6:45 p.m. He also testified that the two phones were together later that same evening.

**{¶30}** Mr. Mahdi argues that Mr. Mosher should not have been allowed to testify. According to Mr. Mahdi, Mr. Mosher was permitted to offer conclusions based on technology and methods that had not been tested to a reasonable degree of scientific certainty. He argues that either the trial court should have ordered a *Daubert* hearing sua sponte or his counsel should have

moved for one because Mr. Mosher's testimony did not satisfy the strictures of Evid.R. 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). He insists he was prejudiced by the admission of Mr. Mosher's testimony because it was "the only thing linking [him] to the shooting."

{¶31} We begin by examining Mr. Mahdi's claim of ineffective assistance of counsel. Upon review, the record does not support his claim that the admission of Mr. Mosher's testimony actually prejudiced his defense. *Strickland*, 466 U.S. at 687. That testimony was not the only evidence linking Mr. Mahdi to the shooting. The State theorized that Mr. Mahdi murdered W.P. at the behest of his brother and his brother's associate. The State set forth evidence that Mr. Mahdi communicated with his brother and the barber near the time of the shooting via Facetime calls that did not register on his cellular network. Those calls were deleted from the brother's call history. Moreover, Mr. Mahdi's cell phone records established that his phone was in the area of the barbershop shortly before the murder occurred. The State introduced those records apart from any testimony offered by Mr. Mosher. The records helped establish that Mr. Mahdi lied to the police when asked for his whereabouts. There was testimony that W.P.'s friend identified Mr. Mahdi as the shooter. Further, the jury heard evidence that Mr. Mahdi lived with his mother, her DNA was found on a spent casing at the murder scene, and she tried to flee when a detective came to collect her DNA. Upon review, Mr. Mahdi has not shown that there exists a reasonable probability that, but for his counsel's failure to challenge Mr. Mosher's testimony at a *Daubert* hearing, the outcome of his trial would have been different. *See Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, at ¶ 138. We, therefore, reject his claim of ineffective assistance of counsel.

{¶32} This Court likewise rejects Mr. Mahdi's claim of plain error. As previously noted, claims of plain error and ineffective assistance of counsel both require proof of prejudice, but

"plain error requires more certain proof of prejudice to the appellant." *In re J.S.*, 2017-Ohio-75, at ¶ 9. Because Mr. Mahdi cannot prove the prejudice aspect of his claim of ineffective assistance, he likewise cannot prove the more demanding prejudice aspect of his claim of plain error. *See id.* Accordingly, his second and third assignments of error are overruled.

## III.

**{¶33}** Mr. Mahdi's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

RUSSELL S. BENSING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.