[Cite as *State v. James*, 2024-Ohio-3241.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  CASE NO. 13-23-27

  v.

MATTHEW E. JAMES,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 23 CR 0057

Judgment Affirmed

Date of Decision:  August 26, 2024

APPEARANCES:

    *W. Alex Smith* for Appellant

    *Angela M. Boes* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Matthew E. James ("James") brings this appeal from the judgment of the Common Pleas Court of Seneca County entering judgment of conviction on three felony counts. James claims on appeal that his convictions were not supported by sufficient evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} On February 2, 2023, James' father, Roy, obtained an ex parte civil protection order ("CPO") prohibiting James from being in his home. On February 20, 2023, James went to Roy's home and entered it, despite the CPO prohibiting him from being there. Roy called the police and James refused to leave. James eventually ran up the stairs and barricaded himself in a room there. James had a hatchet and a baseball bat with him and threatened the police with physical violence. Eventually, James surrendered and was placed under arrest.

{¶3} On March 9, 2023, the Seneca County Grand Jury indicted James on the following counts: 1) burglary in violation of R.C. 2911.12(A)(1), (D), a felony of the second degree; 2) violating a protection order in violation of R.C. 2919.27(A)(1), (B)(4), a felony of the third degree; and 3) resisting arrest in violation of R.C. 2921.33(C)(2), (D), a felony of the fourth degree. At the arraignment, James entered pleas of not guilty and not guilty by reason of insanity to the charges. A jury trial was held from September 18 to September 20, 2023.

Case No. 13-23-27

The jury found James guilty as charged in the indictment. The trial court held a sentencing hearing on September 26, 2023, and sentenced James to prison. James appeals from this judgment and raises the following assignment of error.

**[James] was convicted of a violation of R.C. 2919.27(A)(1), (B)(4) and R.C. 2911.12(A)(1), (D) without legally sufficient evidence.**

*Sufficiency of the Evidence*

{¶4} The sole assignment of error claims that the convictions of counts one and two were not supported by sufficient evidence.

> A sufficiency analysis "'determine[s] whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997), quoting Black's Law Dictionary 1433 (6th Ed. 1990). If the state fails to present sufficient evidence on every element of an offense, then convicting a defendant for that offense violates the defendant's right to due process of law. *Id.* at 386-387,; see also *Jackson v. Virginia*, 443 U.S. 307, 316, (1979).

*State v. Messenger,* 2022-Ohio-4562, ¶ 13. The question of whether the evidence presented at trial is legally sufficient to support a verdict is a question of law and questions the adequacy of the evidence. *State v. Hulbert*, 2021-Ohio-2298, ¶ 5 (3d Dist.). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991) superseded by constitutional amendment on other grounds. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light

-3-

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

**{¶5}** The second count of the indictment alleged that James had violated the CPO. The State was required to prove that James 1) recklessly 2) violated the terms of a protection order and 3) that James was served with a copy of the CPO or otherwise notified in one of the ways set forth in R.C. 2919.27(D) *State v. Doss,* 2019-Ohio-2247 (2d Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). The CPO in this case required James to vacate the premises. The trial court gave exclusive possession of the residence to Roy. The CPO required James to remain at least 500 feet away from Roy at all times. The CPO also stated that if James wished to remove his belongings from the home, he needed to be accompanied by an officer in uniform.

**{¶6}** Deputy Jeff McCoy ("McCoy") testified that he personally served James with a copy of the ex parte CPO on February 2, 2023. McCoy reviewed the restrictions with James when he provided James with a copy, including telling him that he needed to vacate the premises and stay away. A copy of the final CPO was

-4-

admitted as exhibit 1. McCoy testified that the final CPO contained the same restrictions as was included in the ex parte CPO McCoy served to James. Roy testified that James entered the home on February 20, 2023, stating that he wanted to pick up some of his clothes. James was not accompanied by any police officer when he entered Roy's home. These actions were in violation of the provisions of the CPO. James was aware that there was a CPO and that it had gone into effect only 18 days previously. James argued with the officers that it was not fair, but he knew he was not supposed to be at that location at that time. By going to the home and entering it while Roy was present, James acted with indifference to the consequences of violating the terms of the CPO.

{¶7} James argues that he could not have violated the terms of the CPO because he had not received service of the final order, only the temporary order. A review of Exhibit 1 shows that the clerk of courts indicated that a copy of the final CPO order was sent via ordinary mail to James on February 14, 2023. Good service of items sent via ordinary mail is presumed when the fact of mailing is entered on the record as long as the envelope is not returned showing failure of delivery. *Wells Fargo Bank, N.A. v. Lundeen*, 2020-Ohio-28, ¶ 17 (8th Dist.) and Civ.R. 4.6(D). On appeal James denies receiving it, though he did not testify at the trial. However, the question of whether the final order was ever *received* is irrelevant because the parties agree that James received a copy of the temporary order which was personally served upon him and explained to him by McCoy.

**{¶8}** Pursuant to the version of R.C. 2919.27(D) in effect at the time of James entering the home, service of the CPO is not a requirement for conviction as long as one of the statutory exceptions to service is proven.[1]

> In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued and proves that the defendant recklessly violated the terms of the order or agreement.

R.C. 2919.27(D). James admitted on the body cam footage that he knew of the CPO when speaking with the officers at the home. McCoy testified that he had previously informed James about the CPO and what it required from him. McCoy also testified that James indicated he understood what he was told. Thus the undisputed evidence was that James was shown the CPO by a law enforcement officer and that officer informed James that it had been issued and explained the contents. This meets the statutory requirements excepting the proof of service of the CPO.

**{¶9}** This then raises the question of whether James acted recklessly when he violated the terms of the CPO.[2] Roy testified that James just walked into the home saying he "was grabbing clothes and was leaving". Video Tr. 14. Roy also testified that when he reminded James that there was a CPO, James responded

---

[1] This version of the statute was in effect from September 27, 2017, to April 3, 2023, with the offense occurring on February 20, 2023.

[2] Reckless behavior was previously defined in ¶ 5.

"Don't worry, I'm out of here, I'm just leaving, just give me some money and I'll be gone." Video Tr. 16. This could reasonably be found by a trier of fact to be acting recklessly in violation of the CPO as it shows that he knew there was a CPO and chose to come to the home anyway. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support a conviction for a violation of the CPO.

{¶10} In the first count, James was charged with burglary. To prove that James engaged in a burglary, the State must prove that James 1) by force, stealth, or deception 2) trespassed in an occupied structure 3) with the purpose to commit any criminal offense. R.C. 2911.12(A)(1). The act of opening a closed, but unlocked door is sufficient to establish that "force" was used under Ohio law. *State v. Rollison*, 2010-Ohio-2162, ¶ 23 (3d Dist.).

{¶11} Here, Roy testified that on February 20, 2023, he was sitting in his kitchen when he heard the front door open. Roy got up and walked to the entry to the kitchen to see James walking in Roy's home. James then went upstairs to get some of his belongings. When James came back down, he asked Roy for some money, and then became agitated when Roy told James he had no money to give to James. Roy told James he was not allowed to be there, but James did not leave. Roy was nervous due to James behavior, so he called 911. Roy also testified that James did not knock or wait for an invitation before entering the home through the unlocked door.

{¶12} By opening the closed, but unlocked front door, James used force to enter into the home. Roy was home at the time, making it occupied. Roy did not give James permission to be there and demanded that James leave, showing a trespass. Finally, James knew he was committing a crime by being there as he was aware of the CPO. Roy testified that he told James he could not be there because of the CPO. As discussed above, James was violating the CPO, a criminal act, when he entered the home to pick up clothing without being accompanied by a police officer in uniform. Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a conviction for burglary.

{¶13} As the evidence was sufficient to support convictions for counts one and two of the indictment, the assignment of error is overruled. No challenge was brought on appeal to the conviction for resisting arrest. Thus, we need not address that conviction.

{¶14} Having found no prejudicial errors in the particulars assigned and argued, the judgment of the Common Pleas Court of Seneca County is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**